IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

EDWIN ELMER COVENTRY, V,[1]    )
                                )
         Plaintiff,             )
                                )
v.                              ) CIVIL ACTION NO. 2:09-CV-1046-TMH
                                )              [WO]
                                )
DET. P. CROSBY and THE CITY OF  )
MILLBROOK, ALABAMA,             )
                                )
         Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Edwin Elmer Coventry ["Coventry"] challenges the constitutionality of actions undertaken with respect to his detention and arrest for third degree burglary and second degree theft of property on April 16, 2009.[2]  Specifically, Coventry complains that defendant Crosby, a detective with the Millbrook Police Department, improperly detained him for questioning and thereafter subjected him to a warrantless arrest absent probable cause.  Coventry seeks compensatory and punitive damages for the alleged violations of his civil rights.  *Complaint - Doc. No. 1* at 4.

---

[1]The plaintiff is also known as Eddie Coventry and is identified by this name in various documents and digital video recordings contained in the record.

[2]Both of these offenses are felonies under Alabama law.  *See Ala. Code* § 13A-7-7(b) ("Burglary in the third degree is a Class C felony."); *Ala. Code* § 13A-7-7(b) ("Theft of property in the second degree is a Class C felony.").

The defendants filed a special report and supporting evidentiary materials addressing Coventry's claims for relief.  Pursuant to the orders entered herein, the court construes the aforementioned report as a motion for summary judgment.  *Order of March 19, 2012 - Doc. No. 29*.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion, the evidentiary materials filed in support thereof and the plaintiff's response, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility

---

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [– now dispute –] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive the defendants' properly supported motion for summary judgment, Coventry is

3

required to produce "sufficient [favorable] evidence" which would be admissible at trial

supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the

nonmoving party relies] is merely colorable ... or is not significantly probative ... summary

judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the

opposing party's position will not suffice; there must be enough of a showing that the [trier

of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106

S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577

(11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise

insufficient to create a genuine issue of material fact and, therefore, do not suffice to

oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*,

276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir.

1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting

evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d

912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces

nothing beyond "his own conclusory allegations" challenging actions of the defendants);

*Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own

conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when

a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to

4

establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not

5

lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, the court concludes that Coventry has failed to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

6

### III.  DISCUSSION

### A.  Relevant Facts

In the early morning hours of April 16, 2009, officers with the Millbrook Police Department were dispatched to the Cigarette Outlet in Millbrook, Alabama in response to activation of the store's alarm system.  Upon their arrival on the scene at approximately 4:20 a.m., officers observed a green four-door vehicle, described as a small station wagon, departing the area adjacent to the Cigarette Outlet.  During their investigation, the responding patrol officers determined that a rear window of the Cigarette Outlet had been damaged and used as the point of entry into the building.  Under this window, the officers found a pack of unopened cigarettes and a cell phone.  Upon examination of the interior of the business, officers discovered that several packs and cartons of cigarettes had been taken.

Lt. R. D. Johnson, the third shift patrol supervisor, contacted defendant Crosby, the on-duty detective, regarding the burglary at the Cigarette Outlet.  Crosby went to the Cigarette Outlet to aid in the investigation of the burglary.  Johnson advised Crosby of the information officers had obtained with respect to the burglary and handed Crosby the cell phone found at the scene.  While Crosby maintained possession of the cell phone, the phone received an incoming call.  Crosby answered the call and an individual identifying himself as Eddie Coventry stated that the cell phone was his and whoever had the phone

needed to return it to him.  Crosby informed Coventry he would have to come to the Millbrook Police Department to retrieve the cell phone.  Coventry advised Crosby his cell phone had been stolen earlier that morning.

Within a few minutes of this call, at approximately 6:00 a.m., Coventry arrived at the Millbrook Police Department in a green four-door station wagon driven by Jasper Taylor.  Lt. Johnson informed Crosby that this vehicle was the one he had observed earlier that morning leaving the vicinity of the Cigarette Outlet.  Officers detained both Coventry and Taylor for questioning.

Crosby first interviewed Taylor.  The interview of Taylor began at 6:02 a.m.  Prior to questioning Taylor, Crosby advised Taylor of his *Miranda* rights.[4]  *Defendants' Exhibit 4 (DVD of Jasper Taylor Interview - Part 1)*.  Taylor stated that he understood his rights and that he voluntarily waived these rights.  *Id.*  Taylor also signed a written waiver of rights form.  *Defendants' Exhibit 3 - Doc. No. 28-5*.  During the first part of the interview, which lasted almost 25 minutes, Taylor denied any involvement in the burglary.  Crosby ceased his questioning of Taylor and they exited the interview room.  Within the next few minutes, a period of approximately 7 minutes, Taylor advised officers that he wanted to provide additional information regarding the burglary.  *Defendants' Exhibit 4 (DVD of Jasper Taylor Interview - Part 2)*.  At 6:33 a.m., Crosby resumed the interview of Taylor

---

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

and this portion of the interview lasted until 6:43 a.m.

After resumption of the interview, Taylor implicated Coventry in the burglary of the Cigarette Outlet.  Taylor advised that Coventry had stated to him that Coventry "needed money" and "he [Coventry] was gonna get in that store."  *Defendants' Exhibit 4 (DVD of Jasper Taylor Interview - Part 2)*.  Taylor stated that he drove Coventry to the parking lot of an automobile repair shop near the Cigarette Outlet in the early morning hours of April 16, 2009.  *Id*.  After waiting for a short period of time, Coventry exited the car with a duffle bag and walked toward the Cigarette Outlet.  *Id*.  Taylor advised that after a few minutes he exited the car and began walking toward the Cigarette Outlet when he heard an alarm going off.  *Id*.  Taylor said that at this time Coventry came running towards him with the duffle bag in his hands.  Taylor maintained that he did not know what, if anything, was in the duffle bag carried by Coventry.  Coventry told Taylor to "go ... get outta here."  *Id*.  Taylor stated he then drove Coventry to a trailer where Coventry's brother, Billy Finley, resided.  *Id*.

At 6:54 a.m., Crosby placed Coventry in the interview room.  *Defendants' Exhibit 6 (DVD of Edwin Coventry Interview)*.  After a brief conversation with another officer, Crosby advised Coventry of his *Miranda* rights.  *Id*.  Coventry acknowledged that he understood his rights and that he voluntarily waived these rights, specifically agreeing to answer any questions put forth by Crosby.  *Id*.  Coventry also executed a waiver of rights

form. *Defendants' Exhibit 5 - Doc. No. 28-7.*  Coventry advised Crosby that he had spent the night at Taylor's home.  *Defendants' Exhibit 6 (DVD of Edwin Coventry Interview)*. Coventry told Crosby the cell phone found at the scene was his phone, although it was registered to the account of his sister/brother-in-law for money-saving purposes.  *Id*. Coventry stated he had been using the cell phone the prior evening until around midnight sending texts and downloading ring tones but sometime during the early morning hours the phone had been stolen from Taylor's vehicle.  *Id*.  Coventry adamantly denied any involvement in the burglary of the Cigarette Outlet.  *Id*.  Upon completion of this interview, Crosby placed Coventry in a holding cell.  At this time, Coventry requested he be released or arrested, requests Crosby ignored.

Based on the information received from Taylor, Lt. Johnson and another officer proceeded to the residence of Billy Finley.  Finley signed a consent to search the residence at 8:05 a.m.  *Defendants' Exhibit 10 - Doc. No. 28-12*.  During this search, the officers located several packages of cigarettes in Finely's freezer.  Finley waived his *Miranda* rights and provided information to law enforcement officials which implicated his brother, Edwin Elmer Coventry, as the individual responsible for the cigarettes found in his freezer. *Defendants' Exhibit 8 (DVD of Billy Finley Interview)* (In response to Crosby's question as to how the cigarettes might have gotten in the freezer, Finley stated "they were put in there by my brother ... Edwin Elmer Coventry.").  As support for this statement, Finley

10

advised that he awakened around 5:30 that morning and observed Coventry standing at the freezer either putting items in or taking things out of the freezer. *Id*. At this point, Finley admitted that he did not actually see what Coventry placed in or retrieved from the freezer. *Id*. Lt. Johnson also obtained a written statement from Sharon Fulmer, an individual in the trailer on the morning of April 16, 2009, in which Fulmer stated she "woke up early this morning to use the restroom. At the back door I saw Edwin. Nothing in [his] hand but when I return[ed] from the restroom he was gone. I went back to bed." *Defendants' Exhibit 9 - Doc. No. 28-11*.

Upon receipt of all this information, Crosby completed a uniform arrest report and at 9:22 a.m. advised Coventry that he was under arrest for third degree burglary and second degree theft of property. This arrest occurred without a warrant. Crosby then executed an affidavit containing the details of the offense and submitted sworn complaints to a district court magistrate for purposes of securing warrants for Coventry's arrest. *Defendants' Exhibit 11 - Doc. No. 28-13* at 1-4. The magistrate issued warrants for Coventry's arrest later in the day. *Defendants' Exhibit 13 - Doc. No. 28-15* at 1-2. Based on these warrants, Crosby placed Coventry in the Elmore County Jail at 3:04 p.m. *Defendants' Exhibit 12 - Doc. No. 28-14*.

On May 13, 2009, the District Court of Elmore County, Alabama conducted a preliminary hearing on Coventry's burglary and theft charges. *Defendants' Exhibit 15 -*

*Doc. No. 17* at 1-2.  At the conclusion of this hearing, the judge found probable cause that the offenses had been committed and bound Coventry over to the grand jury for possible indictment.  *Id*.  On July 20, 2009, a duly empaneled Elmore County Grand Jury issued indictments against Coventry for third degree burglary and second degree theft of property.  In January of 2010, a jury returned verdicts of not guilty in favor of Coventry on the charged offenses.

### B.  The City of Millbrook

In an amendment to the complaint, Coventry names the City of Millbrook as a defendant.  *Amendment to Complaint - Doc. No. 21-1* at 1.  Coventry maintains the City of Millbrook is liable to him because Crosby is employed by the City and the City had knowledge of the allegations he presented against Crosby but failed to take corrective action.  *Id*.

"The Supreme Court has placed strict limitations on municipal liability under §1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  Municipalities are usually not liable for the acts of their agents; however, a municipality may incur liability for the actions of a police officer when it promulgates an "official policy" that causes a constitutional violation.  *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 691-94 (1978).  To be successful on a claim against a municipality under § 1983, "a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that

constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Although Coventry amended his complaint to add the City of Millbrook as a defendant, he makes no allegations that a custom or policy of the City caused the violation of his constitutional rights.  Moreover, courts in this district have repeatedly required more than a bare bones, passing reference to a policy or custom to state a claim against a municipality. *See, e.g.*, *Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1301-02 (M.D. Ala. 2009); *Manning v. Mason*, 2011 WL 1832539, at *4 (M.D. Ala. May 13, 2011) (dismissing claim where plaintiffs failed to identify a specific policy or custom); *Lowe v. Montgomery City, Ala*., 2007 WL 1186596 (M.D. Ala. 2007) (vague and conclusory allegations are insufficient to support a claim under § 1983); *Walters v. City of Andalusia*, 89 F.Supp.2d 1266, 1277 (M.D. Ala. 2000) (single incident insufficient to demonstrate "longstanding and widespread practice").  In this case, Coventry makes no reference to a custom or policy of the City of Millbrook. Consequently, the court concludes that Coventry has failed to demonstrate that there exists a genuine dispute regarding any policy or custom related to the City of Millbrook, and thus, the City is entitled to judgment as a matter of law on his claims against it.

### C.  Claims Against Defendant Crosby

There are three levels of interaction between agents of the government and private

citizens – consensual encounters, investigative detentions and arrests, each of which has different ramifications under the Fourth Amendment.  Consensual encounters necessitate no justification so "long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 435 (1991).  Investigative detentions, however, must be based on "a reasonable suspicion supported by articulable facts that criminal activity" has occurred or is about to occur.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989).  Finally, arrests require a showing of probable cause.  *Maryland v. Pringle*, 540 U.S. 366, 370 (2003).  In this case, Coventry challenges his initial detention for questioning, his two-hour confinement thereafter, which he believes constituted a *de facto* arrest, and the warrantless arrest subsequently made by Crosby.

1. Initial Detention for Questioning.  Coventry complains that Crosby detained him for questioning in violation of his constitutional rights.  "The Fourth Amendment is not, of course, a guarantee against **all** searches and seizures, but only against **unreasonable** searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985) (emphasis in original).  In determining whether an investigative detention is reasonable the Supreme Court has adopted "a dual inquiry ... approach" under which a court must "examine 'whether the officer's action was justified at its inception [by reasonable suspicion], and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *Brown*

14

*v. Texas*, 443 U.S. 47, 51 (1979) (internal citations omitted) (A law enforcement "officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest.... However, ... the officer[] [must] have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity."). "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the [detention]." *Florida v. Royer*, 460 U.S 491, 503 (1983). "[I]n assessing the effect of the length of the detention, we take into account whether the police diligently pursue their investigation." *United States v. Place,* 462 U.S. 696, 709 (1983). There is, however, no "hard-and-fast time limit for a permissible" investigative detention. *Sharpe*, 470 U.S. at 685; *Place*, 462 U.S. at 709, n.10 ("We understand the desirability of providing law enforcement authorities with a clear rule to guide their conduct. Nevertheless, we question the wisdom of a rigid time limitation. Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any particular situation."). "While it is clear that 'the brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable on reasonable suspicion,' ... [the Supreme Court has] emphasized the need to consider the law enforcement purposes to be served by the [detention] as well as the time reasonably needed to effectuate those purposes." *Sharpe*,

470 U.S. at 685 (internal citations omitted).   In assessing whether an investigatory detention is reasonable, "it [is] appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.... A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Id*. at 686.

Under *Terry* and its progeny, police can briefly detain a person for investigative purposes if the officer has "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in ... a completed felony...." *United States v. Hensley*, 469 U.S. 221, 229 (1985).

> "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the ... seizure." *United States v. Estrada,* 459 F.3d 627, 631 (5th Cir. 2006). Reviewing courts making reasonable suspicion determinations "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted). In evaluating whether or not an officer's suspicion is reasonable, "due weight must be given ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 88 S.Ct. at 1883. "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu,* 122 S.Ct. at 751 (internal citations and quotation marks omitted).

*United States v. Pack*, 612 F.3d 341, 352 (5th 2010); *Hensley,* 469 at 229 ("[I]f police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in ... a completed felony, then [they may temporarily detain the suspect] to investigate that suspicion."); *United States v. Tehrani,* 49 F.3d 54, 58 (2nd Cir. 1995) (citation omitted) (A brief "investigative detention" is permissible where the officer has "'reasonable suspicion' to believe that criminal activity has occurred or is about to occur.").

> Although the concept of reasonable suspicion is not susceptible to precise definition, *see, e.g., Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585; *Hooper,* 935 F.2d at 493, the requisite level of suspicion to make an investigative stop is "'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Villegas,* 928 F.2d at 516 (quoting *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585). Still, "[t]he Fourth Amendment requires 'some minimal level of objective justification' for making the stop." *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585 (quoting *INS v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). Consequently, an officer's inchoate suspicion or mere hunch is insufficient to justify a *Terry*-type detention. *Sokolow,* 490 U.S. at 7, 109 S.Ct. at 1585 (citing *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883).

*United States v. Glover*, 957 F.2d 1004, 1009-1010 (2nd Cir. 1992).  "The standard for determining whether a particular stop was justified by reasonable suspicion is an objective one ... not dependent on the intentions or motivations of the particular detaining officers." *Id*. at 1010.  In evaluating whether an investigative detention is reasonable under the Fourth Amendment, a court must determine "'whether the officer's action was justified at its inception, and whether the action was reasonably related in scope to the circumstances

which justified the interference in the first place.'" *Sharpe*, 470 at 682, quoting *Terry,* 392 U.S. at 20. "[T]he essence of all that has been written is that the totality of the circumstances–the whole picture–must be taken into account [by the court]." *United States v. Cortez,* 449 U.S. 411, 417 (1991). The test for reasonable suspicion is lenient and "not a difficult one to satisfy." *United States v. Oates,* 560 F.2d 45, 63 (2nd Cir.1977). The law is well settled that "[t]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972).

The circumstances, taken as a whole, are sufficient to demonstrate that Detective Crosby had reasonable suspicion to detain Coventry for questioning. Specifically, during Coventry's initial call to the cell phone, Coventry admitted to Crosby that the cell phone found at the scene of the burglary was his phone. In addition, Coventry arrived at the police station in the vehicle observed by officers leaving the vicinity of the burglary upon their initial arrival on the scene. It is likewise clear that Crosby pursued his investigation in a reasonable and diligent manner. During the majority of Coventry's initial detention, Crosby was questioning another suspect, the driver of the vehicle, to ascertain information relevant to his suspicions. An additional delay in Coventry's detention prior to his questioning occurred due to Taylor's decision to resume his interview and provide further

information to Crosby.  "Clearly this case does not involve any delay unnecessary to the legitimate investigation of the law enforcement officers.  [Coventry] presented no evidence that the officers were diliatory in their investigation....  The somewhat longer detention was simply the result of a 'graduate[d] ... respons[e] to the demands of [the] particular situation,' *Place*, *supra*, 462 U.S., at 709, n.10, 103 S.Ct. At 2646, n.10."  *Sharpe*, 470 U.S. at 688. The defendants are therefore entitled to summary judgment on the initial detention claim.

2. Additional Detention/*De Facto* Arrest/Warrantless Arrest.  After completion of his interrogation of Coventry, which occurred at approximately 7:31 a.m., Crosby removed Coventry from the interview room and placed Coventry in a holding cell.  At this time, Coventry requested that Crosby either arrest him or release him.  Crosby disregarded these requests, leaving Coventry in the holding cell for approximately two hours prior to informing Coventry that he was under arrest at 9:22 a.m.  During this two-hour period of time, officers were dispatched to the residence of Billy Finley. At 8:05 a.m., Finley executed a consent to search his residence and during this search officers located numerous packages of various brands of cigarettes in Finley's freezer.  Finley voluntarily traveled to the police station and, after executing a written and verbal waiver of his *Miranda* rights, provided a statement to Crosby implicating Coventry in the burglary of the Cigarette Outlet.  *Defendants' Exhibit 8 (DVD of Billy Finley Interview)*.  Crosby received this

statement at approximately 8:40 a.m.

Where "an investigative [detention] continues indefinitely, at some point it can no longer be justified as an investigative [detention]." *Sharpe*, 470 U.S. at 685. However, there is no "rigid time limitation" applicable to determining whether an investigative detention is unreasonable. *Id*. "Such a limit would undermine the equally important need to allow authorities to graduate their responses to the demands of any situation." *Id*. "In assessing whether a detention is too long in duration to be justified as an investigative stop, ... it [is] appropriate [for the court] to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.... A court making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing.... A creative judge engaged in *post hoc* evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But '[t]he fact that the protection of the public might, in the abstract, have been accomplished by "less intrusive" means does not, itself, render the [detention] unreasonable.... The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.'" *Id*. at 686-687.

Under the circumstances of this case, Crosby had reasonable suspicion, grounded in specific and articulable facts, that Coventry was involved in the burglary of the Cigarette Outlet so as to warrant his further detention. Crosby continuously pursued his investigation in a diligent and reasonable manner. He questioned both suspects without undue delay and immediately dispatched officers to the residence identified by Taylor as the residence where he drove Coventry immediately after the burglary. Crosby also conducted the investigation in a manner which was likely to quickly confirm or dispel his suspicions. Therefore, it appears that the additional detention "lasted no longer than [was] necessary to effectuate its purpose...." *Royer*, 460 U.S. at 500.

Notwithstanding the foregoing, and assuming *arguendo* that Coventry's additional detention upon termination of his interrogation exceeded the bounds set by *Terry* and its progeny, thereby constituting a *de facto* arrest, Coventry is entitled to no relief because probable cause existed for his arrest at this time.

"An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest. *Case v. Eslinger*, 555 F.3d 1317, 1326–27 (11th Cir. 2009); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226, 1232 (11th Cir.2004); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir.1996). Probable cause exists where the facts within the collective knowledge of law enforcement officials,

derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed. *Madiwale v. Savaiko,* 117 F.3d 1321, 1324 (11ᵗʰ Cir.1997)." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11ᵗʰ Cir. 2010). Probable cause to arrest is present when an arrest is "objectively reasonable based on the totality of the circumstances..... This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.... Although probable cause requires more than suspicion, it does not require convincing proof ... and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a conviction." *Lee v. Ferraro,* 284 F.3d 1188, 1195 (11ᵗʰ Cir.2002) (internal quotation marks and citations omitted). "[P]robable cause is a flexible, common-sense standard....  [I]t does not demand any showing that [the officer's belief that an offense has been or is being committed] is correct or more likely true than false." *Texas v. Brown,* 460 U.S. 730, 742 (1983).

The facts of this case demonstrate that Crosby had probable cause to arrest Coventry for burglary and theft of property upon completion of his interview of Taylor, which occurred prior to the additional detention of Coventry. At this time, Crosby knew that Coventry's cell phone had been found under the window used by the burglar to enter the

Cigarette Outlet.  He also had information indicating that Coventry arrived at the police station in the vehicle seen leaving the vicinity of the Cigarette Outlet soon after officers arrived on the scene of the burglary.  Additionally, as set forth *infra* at 8-9, Taylor provided specific details implicating Coventry in the burglary.[5]  Thus, at the time Crosby returned Coventry to the holding cell probable cause existed for his arrest.  Because probable cause

---

[5]In his response to the defendants' report, Coventry challenges use of the information obtained during Taylor's interview to establish probable cause, as officers did not reissue *Miranda* warnings when the interview resumed.  *Plaintiff's Response - Doc. No.* 36 at 2.  However, for the reasons which follow, this assertion is without merit.  Initially, the court notes that Taylor requested that he be allowed to continue the interview, thereby initiating further interrogation. "That is, [Taylor] waived not only his right to be free of contact with the authorities in the absence of an attorney, but also his right to be free of interrogation about the crime...." *Wyrick v. Fields*, 459 U.S. 42, 47 (1982).  A suspect who has previously waived his *Miranda* rights need not be readvised of these rights "unless the circumstances changed so seriously that his answers no longer were voluntary, or unless he no longer was making a 'knowing and intelligent relinquishment or abandonment' of his rights." *Id*.  The undisputed facts show that the circumstances of the interrogation had not changed, significantly or otherwise, from the time the interview of Taylor was initially terminated until the interview resumed, approximately 7 minutes  later.  In addition, resumption of the interview occurred at Taylor's request within 30 minutes of Taylor's acknowledging and waiving his *Miranda* rights.  There is no evidence that Taylor no longer understood the warnings or their applicability to the continuation of his interview.  Thus, no additional *Miranda* warnings were necessary.  *Wyrick*, 459 U.S. at 47-48; *United States v. Clay*, 408 F.3d 214, 222 (5th Cir. 2005) (no need to readvise suspect of *Miranda* rights where there was no evidence that suspect no longer understood the warnings or did not understand their applicability to interrogation that occurred two days after initial warning); *United States ex rel. Patton v. Thieret*, 791 F.2d 543, 547-548 (7th Cir. 1986) (*Miranda* rights need not be reread after forty-minute lapse); *Stumes v. Solem*, 752 F.2d 317, 320 (8th Cir. 1985) (five-hour interval between first and second interviews did not invalidate suspect's waiver given before the first interview); *Jarrell v. Balkcom*, 735 F.2d 1242, 1254 (11th Cir.1984), *cert. denied*, 471 U.S. 1103 (1985) (change in interrogators and three-hour lapse did not render confession inadmissible); *United States ex rel. Henne v. Fike,* 563 F.2d 809, 814 (7th Cir. 1977), *cert. denied*, 434 U.S. 1072 (1978) (lapse of nine hours between warnings and waiver not too long).  Based on the reasoning of *Wyrick*, it is clear that "[t]he mere passage of time ... does  not compromise a *Miranda* warning.  Courts have consistently upheld the integrity of *Miranda* warnings even in cases where 'several hours' have elapsed between the reading of the warning and the interrogation."  *United States v. Frankson*, 83 F.3d 79, 83 (4th Cir. 1996); *Jarrell*, 735 F.2d at 1254 ("[A] confession given less than four hours after the issuance of *Miranda* warnings [is not] inadmissible because of the failure to reissue the warnings."); *Fike*, 563 F.2d 814 (nine hours between issuance of *Miranda* rights and cooperation is acceptable).  Thus, passage of a few minutes during which the circumstances were virtually unchanged in no way compromised Taylor's *Miranda* warnings.  Morever, "a claim for a *Miranda* violation is not cognizable under § 1983.  *Jones v. Cannon*, 174 F.3d 127-1290-91 (11th Cir. 1999)." *Dollar v. Coweta County Sheriff's Office*, 446 Fed.Appx. 248, 251-252 (11th Cir. 2011); *Wright v. Dodd*, 438 Fed.Appx. 805, 807 (11th Cir. 2011) (same).  The contradictory nature of Taylor's statements likewise do not bar the use of these statements to establish probable cause.  The information provided by Taylor could therefore be relied upon by law enforcement officials as a basis for probable cause to arrest Coventry.

existed at this time and as Crosby had obtained additional evidence incriminating Coventry prior to the warrantless arrest of Coventry, the warrantless arrest likewise did not run afoul of Coventry's constitutional rights.

In light of the foregoing, summary judgment is due to be granted in favor of the defendants on the additional detention(*de facto* arrest)/false arrest claims. *Case*, 555 F.3d at 1326-1327(citations and quotations omitted) ("The existence of probable cause at the time of arrest ... constitutes an absolute bar to a section 1983 action for false arrest.").

3. <u>Perjury</u>. Coventry alleges that Crosby committed perjury in preparing the supplementary offense report, *Defendants' Exhibit 2 - Doc. No. 28-4* at 1-2, and his affidavit filed with the district court magistrate seeking arrest warrants, *Defendants' Exhibit 28-13* at 2, because Crosby "misconstrued evidence and [witnesses'] statements" in preparing these documents. *Complaint - Doc. No. 1* at 3. It is well established that 42 U.S.C. § 1983 does not authorize the assertion of a claim for damages for alleged acts of perjury during proceedings related to criminal proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 334-336, 103 S.Ct. 1108, 1115-1116 (1983) (all witnesses, including government officials, are entitled to absolute immunity from damages liability for their testimony in judicial proceedings);[6] *Freeze v. Griffith*, 849 F.2d 172, 174 (5th Cir. 1988); *Austin v. Borel*, 830 F.2d 1356, 1359 (5th Cir. 1987). Thus, Coventry is entitled to no relief on his perjury

---

[6]In *Briscoe*, the Supreme Court further implied that the false testimony in and of itself does not violate an accused's constitutional rights. 460 U.S. at 327, n. 1.

claim.[7]

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  This case be dismissed with prejudice.

3.  Judgment be GRANTED in favor of the defendants.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before January 25, 2013, the parties may file objections to this

Recommendation.  Any objections filed must clearly identify the findings in the Magistrate

Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general

objections will not be considered by the District Court.  The parties are advised that this

Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by

the District Court of issues covered in the Recommendation and shall bar the party from

---

[7]In addition, the court has thoroughly examined the evidentiary materials contained in the record, including carefully viewing each of the DVD recordings of the interviews conducted on the morning of Coventry's arrest.  It is apparent from this review that the documents prepared by Crosby contain information provided to him by suspects, witnesses and law enforcement officials.  The information set forth by Crosby in his report and affidavit is clearly gleaned from evidence obtained during his investigation of the burglary which occurred at the Cigarette Outlet and is not perjurous.

attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *see also Bonner, 66*1 F.2d at 1209 (adopting pre-October 1, 1981 opinions of the Fifth Circuit as binding precedent).

DONE, this 11th day of January, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE